The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oh yeah, oh yeah, oh yeah. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. All right, we're prepared to hear argument Jalloh v. Garland. Ms. Corbett. May I begin? Thank you. May it please the Court, my name is Zinzibar Corbett, and I occur on behalf of the petitioner in this case, Mr. Osman Jalloh. We are asking the Court today to grant Mr. Jalloh a petition for review for the following reasons. Mr. Jalloh is a local permanent resident and he has held this status since March 12, 1996. He is an alien who is seeking a waiver and is required to establish hardship to remain in the United States. As an alien charged as removable under Section 8 U.S.C. 1227, the sentence is different than someone who is applying for their unclear status for the first time. He was placed in proceedings because of four convictions for possession of marijuana or possession of drug paraphernalia relating to marijuana. Well, how does the record tell us that that drug paraphernalia was adjunct to marijuana? Where in the record can we find that? I seek your indulgence, Your Honor. We can rely on the petitioner's own credible testimony, and I will refer to the admin record specifically. I seek your indulgence. Well, the reason I ask that, I assume that the BIA rested their decision that either they didn't believe your client or there's just nothing but an assumption that marijuana was involved. Well, Your Honor, we can rely on the petitioner's own credible testimony at his individual hearing, and this was at the admin record, page 435, specifically lines 4 and also that the convictions he had were relating only to marijuana and nothing else. And also the police records in the evidence in the record also state that the charges he had and convictions were all relating to marijuana. What we have before us is your motion to reopen, correct? Yes, Your Honor. What I want, just a preliminary question, hasn't it been nine years since the final administrative ruling? It has been, Your Honor. That's pretty untimely to make a motion to reopen nine years after a final administrative decision. It's supposed to be filed within 90 days. Yes, Your Honor, and we do concede that fact, and I would say at this time I didn't need to seek post-conviction relief from Mr. Jarlow and the successful vacatur of three of his convictions and also his life and medical condition that did render him disabled up until this day. I believe those were factors that did constitute and lead to the delay in filing of his new motion to reopen, but there were sufficient circumstances to establish a premature case of eligibility and also to equitably toll the filing deadline in his motion to reopen case. If we excuse that, what are we saying about timeliness and administrative removal proceedings? Your Honor, I do think the facts in this case are very specific given his medical conditions and his criminal history that he didn't seek post-conviction relief for these three or four convictions, and I don't think that it is to stretch the law to grant it in this case because he did have four convictions that did initially render him ineligible, but once he was able to seek successful post-conviction relief, the circumstances in his case did change, and he did at that time warrant a reopening of his case. Let me ask you this. Both sides seem to be, I don't know, maybe just oversight inconsistent in the use of the terms permanent resident or non-permanent resident and also as a good statute. What is he, a permanent resident or non-permanent resident? Your Honor, in this case, Mr. Giallo is a lawful permanent resident. And the section that you are asking for relief under is 245? Well, he was charged as removable under 8 U.S.C. 1227 as a deportable alien. Okay. And it's also under that section where he qualifies for the relief under 8 U.S.C. 1227, A2B1. And the ground for the BIA's decision here was just on a paraphernalia ruling, right? They assumed that equitable tolling would apply and said, assuming all that, um, he doesn't qualify because paraphernalia doesn't qualify, right? That is correct. Regardless of the amount of marijuana or this side or the other. That is correct. That was the ruling in their decision of this case. And you argue that that is not consistent with their precedent? We do, Your Honor. And if I may, can I cite the two BIA decisions that were issued that are very specific to this case? The first was Martinez Espinoza and in that case, the board held that an alien who is inadmissible based on paraphernalia offense may qualify for a waiver of inadmissibility under Section 212H of the Act if that offense relates to a single offense of simple possession of marijuana, 30 grams or less. In this case, it was held that trace amounts of marijuana on paraphernalia will still permit respondents to qualify for protection under the code 81227A2BI if he was charged with possession of drug paraphernalia and in this case, Mr. Jallo was. And given that trace amounts of marijuana on paraphernalia were what were found by the police and that led to his charge and subsequent conviction, it is our position that he qualifies for the exception under 81227A2BI based on Martinez Espinoza. The BIA argues that you've already conceded that your April 2000 paraphernalia conviction made him removable and that the concession is binding. What do you have to say about that? Your Honor, as facts were when Mr. Jallo pledged his NTA in 2009, he had four charges before him and he pled to all four charges based on the facts as they were at that time. But facts did change subsequent to his pleading to the NTA that led to the successful, my apologies, post-conviction relief and begged for three of those convictions and the circumstances changed that warranted the reopening of his case. Mr. Jallo should not be bound to his pleadings because the law also permits parameters by which respondents may seek the reopening of his case and in this case, it is our position that the petitioner did in fact meet the standard and he did in fact merit the reopening of his motion to reopen before the court. The board's decision was factual in nature, was it not? Yes, Your Honor. Don't we owe some deference to those determinations? Yes, Your Honor, you certainly do. But I would just put forward once again that the circumstances after his pleading to the NTA in 2009, they did in fact change and it is for that reason that he filed a motion to reopen in 2010, seeking that the courts actually open his case once again before the court. You're pleading an exception here because normally individuals convicted of drug offenses are thought to be removable. And when you're pleading an exception, you bear the burden of establishing the exception. And BIA argues that you introduce no evidence that the paraphernalia here was related simply to a small amount of marijuana possession. What reason do we have to say that you've pleaded the exception? My apologies, Your Honor. In response, I would note that we can rely on the petitioner's own testimony at his hearing. And I would refer the court once again to page 436 of the record, lines 4 and also lines 14 to 15, where he did state that his convictions were related to marijuana. And also, the police record in this case does state that the convictions were related to marijuana. Unfortunately, the counterfeit copy of the chemist... Weren't you stating in your response to me, weren't you just stating a conclusion? No, Your Honor. I was actually referencing portions of the record where the police report and the testimony of the petitioner support that the convictions were related to marijuana. When she was arrested or he was arrested for drug paraphernalia, weren't there other charges? My apologies, Your Honor. Yes, there were other charges. What were those other charges? I seek indulgence, Your Honor, to refer to the record. I humbly seek your indulgence. The other charges include a charge for theft that was also levied against Ms. Jallo in that case or from that incident. And I do believe there was at least one other charge that he was charged with on that day. Excuse me, I didn't hear you. I said he was charged with theft on that day also, Your Honor. And I believe there was at least one other charge that I'm currently searching for in my notes. I seek indulgence. I thought there were several other charges that were brought in connection with the arrest for drug paraphernalia. Yes, Your Honor, there were. Maybe that's not by itself dispositive, but it certainly could be used as evidence by the BIA or any administrative tribunal that the possession of marijuana or paraphernalia was not purely a personal thing, that there were distributional activities or more serious activities involved. And given that, in addition to the fact that there's, so I just see there are a number of problems here. There's no evidence. And it's important when an exception to a statute like this is passed, that one bear one's burden of establishing the exception. And it seems hard in this sort of vacuum to overturn the BIA. And the additional problems present themselves of a concession that you are removable. Your client is removable. And this thing comes to us nine years after a final administrative decision that's supposed to be challenged within 90 days. I realize you cited various extenuating circumstances, but there seems to be, you know, they do seem to be multiple problems here. And not just one, but there seem to be an evidentiary absence and vacuum. And in addition to the substantive problem of proof, there are the process problems of untimeliness and an earlier concession of removability. So we're trying to deal with both an absence of evidence and all of the procedural difficulties as well. There's several things. You see the problem? I do, Your Honor. And if I may, as to the procedural deficiencies, we do want to also emphasize the fact that Mr. Jarlow does suffer from a life medical condition, namely osteomyelitis. And this really did cause him this delay in filing his motion before the board. Along with the need to seek post-conviction relief, I do believe that these factors cumulatively did constitute or lead to the delay, which generally is unfavored by the board and by the courts. But in this case, there were specific facts that led to the delay in this case. All right. Thank you very much. If my co-panelists have no further questions, I'll ask the attorney for the government to come forward. Thank you. Good morning, and may it please the court. My name is Stephanie Graw, and I represent the Attorney General. Your Honors, at first, I want to clarify something very important. Mr. Jarlow is no longer a legal permanent resident. And this is because the board last issued a decision in this case in 2010. And in that decision, it upheld the immigration judge's finding that he was removable for convictions related to drugs. And this is under AUSC 1227A2EI. Mr. Jarlow's claim today that he is still a legal permanent resident is unfounded and not supported by this record. Moving on to the important aspects that Judge Uphold, the board's denial of Mr. Jarlow's untimely motion to reopen, because Mr. Jarlow failed to demonstrate that he is prima facie eligible for what he seeks, which is reopening and termination of his proceedings, as his concession of removability before the immigration judge is binding and cannot be disavowed years later in an attempt to seek a more favorable result. And even assuming that this concession is not binding, the record is devoid of any evidence that his conviction for drug paraphernalia would fall under the personal use exception related to marijuana. Let me ask you one question here. A lot of these cases come up to us in which the board argues that its denial of the motion to reopen was not an abuse of discretion. And we have that aspect of it here. And then the board, the BIA also sort of tacks on a jurisdiction. And oh, by the way, and a lot of times this is at the end of a brief, oh, by the way, you don't have jurisdiction to review this either. Now, which is the board seeking here, a jurisdictional dismissal or the fact that there was no abuse of discretion in denying the motion to reopen? And as I see it, the jurisdictional provision is addressed specifically to final orders of removal. And is there a final order of removal here that would deprive us of jurisdiction over what does seem to be a factual matter and not a matter of statutory law or constitutional law? It's just a particular exception applies to the particular facts of the case. So how does your merits argument dovetail with the jurisdictional provision? Is there a final order of removal here that we must grant a jurisdictional dismissal or you're arguing strictly on the merits of the denial of the motion to reopen? What are you asking? Yes, Your Honor. The government acknowledges that sometimes these issues can be conflated, especially here when there are claims related to the board's abuse of a discretion. It does kind of confuse the issue. However, here, the final order of removal was upheld by this court actually previously back in either 2010 or 2011. Before the court today, this court is looking at whether the board abused its discretion in the motion to reopen. And that is the questions related to concession of his charges and whether the board abused its discretion. But assuming that the board didn't, and in all the alternative in our brief, we did argue that Mr. Jala is a criminal alien based on his concession that he is a removable non-citizen. He would, this court would be barred unless there is a constitutional or legal question. So we do have a final order of removal here. You're sorry, you're arguing. There is a final order of removal. However, this court's already reviewed whether that final removal was valid based on the board's upholding of it back in 2010 or 11. What we have before you today is the board's denial of the motion to reopen. And the government- Can we review that? You know, you put it that a lot of these, a lot of times these briefs conflate these things. And I try to figure out how to do it. And it seems to me that what you're really asking is sort of a dual ruling that there was no abuse of discretion in declining to reopen. And to the extent that a final, that you're asking us to review a final order of removal, the matter is fairly factual and we're without jurisdiction to do that. I mean, I think you're sort of, sort of two things are involved, two things are involved and you argue that you went on either one. Well, Your Honor, you said it perfectly. Yes, this is the first issue that this court can look at is whether the board did abuse its discretion. And this court does have jurisdiction to do that. Again, this is a difficult burden to meet as the board does have discretion to decide whether or not to open a case, especially here when it- How is this a factual ruling? My reading of the BIA's decision was they didn't assess the evidence. They said, even assuming that his offense involved 30 grams or less, he doesn't qualify because this was a paraphernalia offense. That's not a factual determination, is it? Isn't that a legal determination that this is what this means? This requirement means that any paraphernalia offense doesn't qualify? Well, Your Honor, first I would point this court to the board's first addressing of Mr. Jala's concession of removability back before the immigration judge. What about what I just asked? Well, what you just asked, yes, the board, the government does concede that the board did make a error in this case when it stated that drug paraphernalia would not constitute for the personal use exception, that is a legal error. However, the government here would argue that this is harmless error and there's no need to remit it back to the board. And that's because even looking at the evidence that we have- So you're saying you concede that the board made a legal error, but then you ask us to move on and assess the facts for ourselves. In the first instance, without a board decision assessing the facts, you ask us to undertake that factual finding without sending it back to the board because you say we can do that because the evidence shows that he wouldn't be entitled to it anyway. Well, the government is asking first that this court look to the board's determination relating to the concession and that determined that Mr. Jala did not establish that he's prima facie eligible for reopening. Then in the longer ballot, that is when the board did make its error in determining that drug paraphernalia cannot constitute for the personal use exception. We argue that this is harmless error because the board relied on first that concession, that is a factual issue. The concession, I mean, is it a factual issue? The question is, can someone be held to something? Isn't that the whole purpose of a motion to reopen, I guess, is that if the facts change, you can come back and say, you know, the facts were one thing when the board originally made its decision, but the facts have changed and I'm coming back and asking you to reopen. And wasn't his concession based on different facts that he had? He had these four convictions and now he doesn't. He only has one that doesn't qualify. So, I mean, why, what's your authority or the sort of legal proposition that he can't change his concession when the facts undergirding that concession have changed? Yes, your honor. And respectively, the record here still does establish that he has this drug paraphernalia conviction for marijuana, which was presented back in his notice to appear back in 2010. The government also would point to various decisions by this board, some unpublished and some published, relating to the concept of concession. It is in the regulations. It states that an immigration judge can rely on concession as long as that immigration judge sees that there's no issue of law or fact. And a concession can be made either by a non-citizen or their attorney. As long as the immigration judge is satisfied, they can rely on this to determine that the government has met its burden of proof. And that is the situation we have here. No one's disputing that the agency could rely on the concession 10 years ago, whenever this decision originally came out. The question is now that the facts have changed and his concession is no longer true, right? He no longer has these convictions because he sought post-conviction relief and got them removed. And now his concession is just, it's not true anymore. And I didn't see much of anything to go on in the law as to whether a petitioner can't come back to the board and say, I want to reopen. Facts have changed and my concession is no longer substantiated in the facts. Well, first I'll point this board to this court's decision in Salem v. Holder. This is a fourth circuit decision which discusses a non-citizen's concession of removability and the properness of an immigration judge relying on it. Additionally, in an unpublished decision in Asiano v. Garland, this court mentioned that it's a well-settled principle that once a non-citizen concedes removability, it's not something that can be years later gone back and addressed and changed. And here the situation is not necessarily different. The government does not concede that the three convictions that Mr. Jala alleged are no longer proper were dismissed for a procedural due process. That has never been addressed by the board. It could be possible that they were done for rehabilitative relief, which would still qualify a conviction for immigration purposes. And again, that's not the board's reasoning. And all our job is on review is to look at what the board said and make a decision based on that. Now the board, you know, if this gets remanded, the board might look and say, we can't accept his concession because we don't agree that these four convictions aren't still valid and aren't still out there. But that's not what they said. They said you can never take it back even if the facts have changed. Yes, Your Honor. I would also point this forward to other circuits that have addressed this issue, which is a non-citizen years later attempting to It stated that a non-citizen cannot years later attempt to challenge a previous concession without any evidence that this concession was say made by ineffective counsel or with questionable circumstances. And the second circuit in that case said that looking in hindsight, yes, it might've been better if not the non-citizen didn't concede, but that's not the case and it can still be relied upon. I appreciate you giving me case law because this is not an area where there's a lot out there, but it strikes me as this is still different, right? Where it's not looking backward and saying, oh, that was an unwise concession and I've changed my mind. I wish I hadn't done that, but rather it was appropriate at the time because the facts supported it, but now the facts have changed. So Your Honor, the government respectfully disagrees because Mr. Jala's conviction for drug paraphernalia, which was in his NTA at the time he made his concession, is still valid. This is the 2000 conviction for drug paraphernalia. If any of the evidence supported Mr. Jala's argument today that this was for personal use and that it was for a small amount of marijuana, this concession back in 2010 was made in error and should not. It does not matter if it's all four. Under this removability statute is, are you removable for a crime related to a controlled substance? The four of them didn't matter whether there's one, two, three, four. And the last one, the 2000 drug paraphernalia, the government is arguing is still valid. That concession establishes that he is still removable. And that's a good point, right? So that he had four. He didn't have any argument that he wasn't removable for a drug crime because there were four drug crimes. But you're saying he should have said, well, the paraphernalia one doesn't count, even though I concede I am removable for these other three. Absolutely, Your Honor. And he could have done that. The problem here is that the record is devoid of any evidence to show that this drug paraphernalia conviction would fall under the personal use exception. While opposing counsel did mention that some records are no longer valid. Counsel, even at this late date, when you read, there's simply no evidence brought forth that this was simply for personal use. If there had been, well, we might have a different case, but there's just no evidence that this marijuana was simply for personal use, even after all this time. And the other question I have is after nine years, things are always going to change. There's always, I mean, that's a long period of time. And we would essentially be throwing open the gates to motions to reopen after, on the basis of changed facts, when the facts, whatever facts that are changed, don't go to the evidence. Absolutely, Your Honor. And that's why this court has repeatedly held the board and the Supreme Court that motions to reopen are disfavored because any delay works to the advantage of the non-citizen. While the government does acknowledge that Mr. Jala does suffer from a disability, that does not change the fact that he established that even assuming timeliness that the board found, even assuming that he merited equitable tolling, he has failed to demonstrate that he is prima facie eligible for reopening and termination. And this court should uphold that for abuse of discretion. Now, to Judge Rushing's point that she's been trying to make with you, I think what she's saying is they just didn't do the analysis in the first instance. So, why don't you send it back and let them do the analysis and come back and case closed? Sorry, Your Honor. Just to clarify, are you stating the analysis relating to timeliness and equitable tolling or related to the crime? Yes. So, the government would argue that the board's analysis related to whether or not Mr. Jala conceded his removability and if he's challenged that on appeal to the court or that he's mentioned it in his motion to reopen that he didn't meet his burden, we would argue that this court can properly uphold that finding. And then again, even assuming, acknowledging that the board did make a mistake here as it relates to drug paraphernalia because it has repeatedly held that it could constitute personal use exception, we would argue that, again, this is harmless error because sending it back shows that there is still nothing in the record. Again, every delay works to the advantage. This case was decided in 2010. When they filed the motion to reopen, it was nine years later. And still before the board and this court, there's nothing to show that it related to personal use. Judge Wilkinson asked opposing counsel about other charges when he was arrested for drug paraphernalia. The government would point to the fact that he was arrested for theft, unlawful taking of a motor vehicle, possession of marijuana, a false statement to a police officer, and drug paraphernalia. In the evidence that Mr. Jala submitted in his motion to reopen, all it states is that this drug paraphernalia is still a guilty plea. And this government would note that the former charge of drug paraphernalia, which he was charged under, 237, is no longer applicable in Maryland. In fact, it's now under a different charge, 619 of Maryland Code. And it's important to note that now that charge for drug paraphernalia states that it does not apply. Counsel, it is a very, very rare thing that we grant motions to reopen, and particularly after this length of time. And numerous courts have explained why that is so. And if we started granting these motions to reopen, we've moved the process into a point of interminability. And it would just open the gates to an avalanche of claims, and it would be eroding any definition of finality in these immigration proceedings, which the Supreme Court in the law is an important consideration. And reopening in a case like this, at least if you're going to reopen, you would want to have a more compelling set of circumstances than you would find here. There's still a total absence of evidence that this reopening is warranted. Yes, Your Honor, the government would agree with your assessment. Again, while the government acknowledges that Mr. Jala does suffer from osteomyelitis, he has had this condition since he's been in the United States. And the immigration judge and board in its initial determination acknowledged this and noted, and Mr. Jala himself testified that years down the road, he may need further surgery. In his motion to reopen, he mentions that he's recently had further surgery, another reason to reopen. But again, this is not the case that he has met. May I briefly conclude? All right. If my colleagues have questions, I'll ask that you entertain those. Judge Rushing, do you have further questions? Yeah, thank you, Judge Wilkinson. Judge Floyd? Thank you so much, Your Honors. All right, let's hear from counsel in Roboto. Thank you, Your Honor. Please allow me to correct the record. Mr. Jala was, in fact, a local permanent resident, but now he is not because he was ordered removed, as my opposing counsel correctly stated, and we are now trying to get back his LPR status in these proceedings. I would like to focus on the fact, Your Honor, that the BIA actually never addressed the issue of whether he actually gave enough evidence for his motion to reopen. And this is not harmless error as was put forward by my opposing counsel. Given that the board never actually considered this issue, we do believe that this merits a remand to the board so that they can properly consider this issue before them. This court in Oyemi versus in immigration naturalization has stated three independent grounds on which the board may reopen a case. One of these is where the respondent has ICP indulgence, where the alien has not established a prima facie case for the underlying relief sought, underlying substantive relief sought. In this case, Mr. Jala has presented enough evidence to establish reopening of his case, and the board did not consider this evidence before them. Instead, the board went right to the merits of the case and proceeded to establish that his conviction did not classify, his conviction for paraphernalia did not, was not sufficient to make the exception under 81227A2BI. Given that the board never considered this issue, this case should be remanded on that case alone, on that issue alone. My apologies. Secondly, Your Honor. Can I ask you a kind of factual procedural question? When a petitioner conceded removability because he had a drug conviction, is that just a general concession, or does that go conviction by conviction and say, you know, for conviction number one, I'm removable because that's a drug crime, number two, same, number three, same, or is it just a general agreement with the government that, yes, I have one or more convictions for a drug crime, and so I'm removable? Thank you, Your Honor. Based on my review of the record, it seems to have been a general admission to the charges before him, because if you look at the NTA, that is part of the record at page 14, at line 6. There was no mark that he actually admitted the allegation for the April 17, 2000 conviction. Based on that fact, it does seem that his admission to the facts as they were at the time in 2009 was a general admission, as opposed to an admission to each conviction in the notice to appear. That's an admission that at least a conviction exists, but it's not necessarily an admission to the underlying facts. That is correct, Your Honor, and I believe that had the facts been different in this day and age, how do we, in immigration courts today, with a single conviction for drug paraphernalia, he would have pled differently because circumstances have changed than they were in 2009. Your Honor, I will continue to put forward that the board's lack of a decision on the issue of his motion to reopen and whether he, in fact, was not harmless. The board was required pursuant on YEMI versus U.S. immigration naturalization to actually rule on this issue, and they did not for whatever reason. We do not know, and it is not within this board's jurisdiction now to deny his petition for review because the board did not address that issue. It was the board's jurisdiction and responsibility to properly address this issue when this case was before them, and they failed to do so. Have you been in immigration courts right now? I do believe that Ms. Giles pleading to the NTA would have been different. It is fundamentally unfair now to say that he is stuck with this concession because he would have pled differently had there only been the April 17, 2000 conviction, for which he would also have been eligible for an exception pursuant to AID 1227-A2-BI, and I refer to the court to the matter of Davie where the court held that an alien may be covered by the exception if the alien's crimes were closely related to or connected with a single incident in which the alien possessed 30 grams or less of marijuana for his or her own use. And the facts in this case also support the fact that this case is squared in line with matter of Davie, and the board did not rule on this issue, and for this reason this case should be remanded so the board can properly consider this issue in line with their own presidential decisions in matter of Martinez-Espinosa and matter of Davie. Thank you, your honor. Thank you. We appreciate your argument.
judges: J. Harvie Wilkinson III, Allison J. Rushing, Henry F. Floyd